May it please the Court, Alexander B. Wathen for the petitioners. I was originally the co-amicus on this case, but with the Court's permission, since the retained counsel is not available to argue, I'd like to argue the full 10 minutes on behalf of the petitioners as well. That's fine. Your Honors, the petitioners urge this Court to grant the petition and remand with the instructions to reconsider cancellation for removal because the record compels a different conclusion than that the immigration judge reached. The immigration judge did not say that the testimony was not credible. In fact, this is about the same situation as in the Lopez Alvarado case. There was nothing due to lack of veracity of the witnesses. The immigration judge simply stated that it did not appear that the witnesses were certain as to the timeframe for the continuous physical presence. There was about a few months to a year that was an issue. There was also evidence in the record that while the immigrants testified that they entered in around April 1987 after having been married for a few months, there was also some supporting evidence, testimony by relatives. There was also physical evidence in terms of a California driver's license for misrepairs issued sometime in 1987 as well that also supported the 10 years' continuous physical presence. And under Lopez Alvarado, of course, unless there was the immigration judge makes a specific finding as to the veracity of the witnesses, an implicit So what do you think the I.J. was doing? I think the I.J. was just trying to say they didn't quite prove the case, but absent something that went to the core of the veracity, an immigration judge cannot simply say that they're not sure. It has to be explicit. He feasted on failed memory, I guess, or faulty memory, I guess, was what he was trying to say. And what evidence of faulty memory was there? I can't say right off the top of my head, Judge Fletcher, what evidence of faulty memory. I think that as common sense tells us that something over a 10-year period, other family members may have a hard time remembering it specifically. And I would think that's the case in a lot of immigration cases. And, of course, the way I read Lopez Alvarado, that simply some faulty memory or some is not enough for an explicit negative credibility finding. In addition to the documents you mentioned, I think there was an identification card also that appeared to have been issued in 1987, which seems helpful. That's very correct, Judge Fletcher. In fact, that one would remove any concern about it. In fact, there's even one that had a photo of Mr. Perez on it. Clearly, he couldn't have obtained a California identification card, especially with a photo, without being physically present in the United States. I guess the I.J. was bothered by the fact that Perez let his documents or papers be used, but I think it was after 1987 that this might have happened. I'm not sure I understood the question. The I.J. was bothered by it. I don't understand what the I.J. based his ruling on, and I think he was troubled by the fact that Perez had allowed his documents to be used at some time by somebody else. I think there were some allegations of that, but I think there's no question that all the testimony supports that that was Mr. Perez's documents. Again, there was also some implicit findings that maybe Mr. Perez was in this country illegally sometime in the 1970s. Again, the I.J. even stated that the I.J. would have granted cancellation of removal if the witnesses were sure of their testimony as a time period. And that would certainly, hopefully, that answers your question, Your Honor, that I think that was the only real hesitation that I read from the I.J.'s opinion. In fact, I might be able to pinpoint the page. I think it was, in fact, page 108 of the record that the I.J. states, As stated above, the Court does not find that the testimony of either Respondent was lacking candor. Rather, the Court's decision is that the testimony be accurate or reliable. So it had to have been simply the time period in question. I don't think the other things really factored into the I.J.'s decision. Okay. Did you want to reserve some time for Ruth? Yes, I would, Your Honor. Before you sit down, let me ask you, what are you asking us to do, assuming that we were to agree with your position? What's the form of relief that you're asking? What do you want us to do? To grant the petitioner remanded to the immigration judge. To do what? I think the best would be remanded proceedings consistent with the opinion, because I don't think this Court itself could grant the petition, since this Court only reviews it. They'd have to go on and decide the rest of the factors for cancellation. He'd have to decide the hardship issue. Exactly. I don't think that was fully reached. I think the Court would simply have to say that the record compels a different conclusion with regard to the ten years' continuous physical presence. Okay. Okay. I'm going to reserve the remaining time for Ruth. All right. Thank you, Your Honors. Thank you. Good morning, Your Honors. Bernard Joseph for U.S. Attorney General Eric Holder. In this case, after a full and fair hearing from the immigration judge and review by the Board of Immigration Appeals, the decision was reached denying the petitioner's application for cancellation of removal because the judge found that there wasn't substantial evidence that they would carry their burden of proof that they had ten years' continuous presence starting here in the United States. What do you do with these documents that show 1987 and the testimony of the sister? Well, Your Honor. It's very hard to overcome. Well, I'll start with the documents. I think, at best, the driver's license shows that at some point in 1987, Mr. Garcia was in the United States. I mean, I think that's the best the petitioners have on that. Mr. Garcia has testified that he's been in and out of the United States numerous times, so I don't think that that is evidence that he was continuously in the United States since 1987. It just means that sometime in 1987, he was in the United States. Well, what about the sister's testimony? Well, the sister's testimony is interesting, Your Honor, because it contradicts the testimony of both Mr. Garcia and Mrs. Garcia. The sister testifies that the Garcias lived with her from April or May of 1987 until August of 1988. Both the Garcias testified that they only lived with the sister for four months, as opposed to living with the sister for almost 16 months. So I think this is a case here where you have to look at all the evidence as a whole and all the testimony as a whole. You have multiple witnesses testifying to different things, and so there is testimony that perhaps they entered in 1987 and were here continuously. I think, though, that if you look at the Garcias, there's testimony that from certainly August of 1988 until December of 1988, they were in Chicago. They're both consistent about that. We have Mrs. Garcia's pay stubs from that period of time. Both Garcias are consistent that they only stayed with the sister for either three or four months. If you start working back, if we know they were in Chicago in August of 1988, we start working back three or four months. We're now in April of 1988 or May of 1988, which is consistent with what the judge found, and I think this is not really a credibility case. It's more of a burden of proof case. It's a persuasion case where the judge has to look at all the evidence and all the testimony and decide based on all that testimony what's a plausible story, and in this case, the judge's ruling was that he felt they didn't carry their burden of proof of establishing that they arrived in the United States prior to that. Did he make an adverse credibility decision? Your Honor. Determination? What the immigration judge said is he didn't feel they were entirely credible, and the government... So what do we do with that? Well, I think the government could certainly argue that there is an explicit adverse credibility issue. I think it may not get the government all that far, but I think here, as I said, except all the testimony is true. If the court would not find that this was an explicit adverse credibility finding, then we're required to accept all the testimony is true. Then what you have to do is look at the evidence as a whole, and where you have testimony from multiple witnesses that are inconsistent, it goes more to persuasion than it does to veracity. So as Judge Fletcher said, there is testimony from the sister that they were there in 1987. There's also testimony from the sister that they stayed there from 1987 through August of 1988. Well, there's testimony from the Garcias that they were only there four months, and they were pretty sure about that. There's testimony from the Garcias that they were in Chicago from August 1988 through December 1988. Mrs. Garcia testified that when she came into the country, she babysat for a couple of children. The children at the time were four months old, or I'm sorry, four years old and nine months old. Testified when she left for Chicago, the children were a little over a year old, and the one child was walking but had not yet started walking. The other child was five. That's consistent with the immigration judge's finding that it's plausible, or that he believed that they probably entered the country in April of 1988, but certainly did not carry the burden of proof that they entered in April of 1987. There's also other inconsistent testimony in the record that would lead you to believe that the immigration judge's decision is supported by substantial evidence. And here, to overturn the immigration judge's decision, this Court would have to be compelled that a reasonable fact finder could reach no other conclusion other than that the Garcias entered and stayed continuously since April and May of 1987. I don't know what the other testimony is, but the I.J. indicated that he thought that probably they would be able to establish hardship. Your Honor, I'm not sure what the testimony was either. Do you remember? No, I just read the statement. Right, the I.J. did say that in the statement. And the government at this point doesn't have a position on that because right now— No, you don't have to have a position on it, but it's just an indication that there'd be some real concern about telling these people they have to leave the country if it's going to be hardship. Your Honor, the Congress has mandated that it's a 10-year continuous presence. And unless the petitioners can show that 10-year continuous presence, we really don't get to the hardship issue. What do we do with the documents? There's the card and there's the driver's license. Correct. I think there were also some pay stubs for him. There were pay stubs, Your Honor. One of the things about the pay stubs is Mrs. Garcia testified that Mr. Garcia allowed someone else to use his work papers. But later. Later, I think later, if you believe Mrs. Garcia's testimony that her husband allowed someone else to use the work papers, then I think you do have to call into question what you do with those documents at that point. There are documents showing Mr. Garcia working at a winery in California. Well, those documents run for a long period of time, including a period of time when allegedly he was working at a winery in Bakersfield, California, while he was living with his wife in Chicago along the way. Well, but that doesn't undermine the fact that he still had this document in 1987. He may have done something wrong in letting somebody else use it. Right. But I didn't understand that the ALJ gave that as a reason. He seemed to discredit the card simply because he had lent it to someone else. Well, I think that's what the immigration judge said, was that the card only showed that he had been in the country in 1987. But I don't think he felt that that showed that he had been in the country continuously since 1987. And again, as far as Mrs. Garcia goes, the only documentary evidence we have for her period of time in the country was in August through December of 1988, which is when she was in Chicago and was working there. But she would be a tag along on his petition, would she not? Yes, Your Honor. And the court did say, the ALJ said, the court does not believe that they have intentionally attempted to mislead the court or that the testimony has been less than candid. Correct. He attributed it to a lack of memory to the extent that there were inconsistencies. So what you have is a finding by the ALJ or the IJ that they weren't lying, that to the extent that there may have been inconsistencies, it was due to a lack of memory. You have the card establishing at the very least that the husband was here in 1987, and you have an affidavit of the wife's sister that they lived with her. It's true that the affidavit indicates that they lived with her a little longer than they testified, but that seems like, in the face of a finding that they weren't intentionally lying, it seems like fairly significant evidence. Well, Your Honor, I think that in this case, again, the immigration judge believed that no one was less than candid. However, at this point, he had to take all of the evidence of all of the testimony and try and make sense of it. And for the court to overturn the immigration judge and the board's decision, they have to reach a conclusion that a reasonable fact finder would be compelled to find that they had arrived in 1987. It's not enough that there are a possibility they could have arrived in 1987. I think the government contends in this case there is substantial evidence to support that the arrival was actually in 1988 as opposed to 1987. And I think that the evidence that we've pointed to is substantial in that. There's no evidence that he left the country in 1987, is there? No, there is no evidence that he left the country in 1987, Your Honor. There's evidence that he had left the country multiple times in the past. Prior to 1987, wasn't that it? For the following reasons, we feel that the petition should be denied. Okay. Thank you. I believe there was a few minutes for rebuttal. Your Honors, of course, as a pre-Real ID Act case, corroboration is not required. Yet in this case, corroboration is certainly very helpful. I'll try to go over the record pages. I think in the 190s of the record, it details a testimony. I didn't obviously be able to go over it completely in the few minutes, but it did seem to just discuss time periods when the petitioners lived with their family. I couldn't find any signs that the family affirmatively said that they were out of the country from going over that. Additionally, with respect to the burden of proof in this case, the burden of proof is clearly satisfied with the evidence, and especially with the lack of the inconsistencies do not go to the heart of the case. They have to do it with where they live. There's nothing specifically that states that they were not in the country. So I think the cases that say that inconsistencies, if any, has to go to the heart of the claim, might be helpful as well, and I don't recall the names of those cases at all. Unless the Court has any more questions for me, I think that's really all I feel I need to cover. Thank you. Thank you, Your Honors. Thank you, Counsel. The matter is submitted. And we'll go to our next case for argument, which is Solomon.
judges: Korman, Fletcher B. , Paez